Continental Illinois National Bank and Trust Company of Chicago, Executor of Last Will and Testament of Joseph C. Smith, Deceased, Appellees, v. University of Notre Dame Du Lac et al., Appellees. Joseph Edward Neuhaus, Appellant.
Joseph Edward Neuhaus, Appellant, v. University of Notre Dame Du Lac, Appellees.

Gen. No. 43,375.

568

Heard in the first division of this court for the first district at the April term, 1945. Opinion filed October 15, 1945. Rehearing denied October 30, 1945. Released for publication October 30, 1945.

FRIEDLUND, LEVIN & FRIEDLUND, of Chicago, for appellant; EMIL N. LEVIN and D. M. STALZER, both of Chicago, of counsel.

HUBACHEK & KELLY, of Chicago, for appellee, Continental Illinois Nat. Bank & Trust Co. of Chicago, Executor; HOLLAND C. PILE, of Chicago, of counsel.

FRED L. STEERS, of Chicago, for appellees, University of Notre Dame du Lac, an Indiana Corporation, Mary Collins and Genevieve Mullen, and the University of Notre Dame Du Lac, an Illinois Corporation.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Joseph Edward Neuhaus appeals from a decree entered December 11, 1944, construing the will of Joseph C. Smith and dismissing the counterclaim of Neuhaus.

The complaint was filed by the executor May 7, 1943. The will and codicil were executed November 19, 1940. The will gave to a cousin of testator, Genevieve Mullen, $5,000; to Miss Mary Collins, his secretary, $5,000;

to the Little Sisters of the Poor, $2,000; to his nephew, Joseph Edward Neuhaus, $5,000, household goods, furniture, pictures, jewelry, etc., and "all other articles of personal use, wear and adornment, and any pleasure automobile which I may own at the time of my death."

The testator died September 20, 1942, at the age of about 80 years. The will and codicil were admitted to probate October 9, 1942. Neuhaus was found to be the only heir at law and next of kin of the deceased.

The complaint was by the executor and prayed for a construction of the sixth or residuary clause of the will, which is as follows:

"All the rest and residue of my property of whatever kind or nature, real and personal, wheresoever situated, I give, devise and bequeath to the University of Notre Dame du Lac, a corporation organized and existing under and by virtue of the laws of the State of Illinois, in memory of my Brother, Charles Smith, known in religion as 'Brother Alexander', who was one of the early associates and workers with Father Sorin, the founder of the university of Notre Dame, and said residum shall be known as the 'Brother Alexander Memorial Scholarship Fund', and shall be held, invested and reinvested by the Board of Lay Trustees of said University, and the net income therefrom shall be annually awarded by the President of said University as one or more scholarships to worthy students of the University of Notre Dame who are preparing for the priesthood in the Congregation of the Holy Cross."

February 2, 1944, Neuhaus filed an answer and with it a counterclaim, afterwards amended on May 22, 1944. The answer denied that the residuary legatee, the University of Notre Dame du Lac, an Illinois corporation, was in existence at the time of the death of the testator, on September 20, 1942, and asserted that the residue of the estate (amounting to about $90,000 in value) therefore passed to Neuhaus as his heir and next of kin.

The counterclaim further averred an oral contract between the testator and Neuhaus, whereby it was agreed that in consideration of services in the way of care, etc. to be given to the uncle by Neuhaus and his wife, the testator agreed to execute a will giving his entire property and estate to Neuhaus. The counterclaim alleged the performance of these services, the failure of deceased to execute the will as agreed, and prayed specific performance of the agreement except as to specific legacies and cost of administration.

The University of Notre Dame du Lac, an Illinois corporation, intervened and answered. The executor and others also answered, denying the material averments of the counterclaim.

The cause was put at issue and referred to a master, who reported with findings against the claims of Neuhaus and recommending a decree dismissing his amended counterclaim; also directing the executor to turn over the residuary of the estate to the Illinois corporation, to be held by it "for the charitable, educational, and religious uses, and subject to the trusts, terms, and conditions, provided in Article Sixth of the Last Will and Testament of said decedent." The cause was heard on exceptions of Neuhaus to the report of the master. These were overruled and a decree entered as recommended.

It is the contention of Neuhaus that the bequest to the Illinois corporation lapsed by reason of its non-existence at the time of the death of the testator, and that as to the findings on the counterclaim the court erred in denying motions made in his behalf to continue the cause by reason of his absence in the Army of the United States in a foreign country when it was tried.

While the bequest was to an Illinois corporation this corporation was closely related to the well known Notre Dame University, an Indiana corporation. Its certificate of organization was issued by the Secretary

of State of Illinois on November 27, 1934. All the incorporators resided at Notre Dame, Indiana. They and its directors were each and all members of the Congregation of the Holy Cross and teachers and officers of the Indiana university. As a matter of fact, the Illinois corporation was incorporated to act as agent and nominee of the Notre Dame University of Indiana. The Illinois corporation, unlike the Indiana, did not have any board of lay trustees. It never functioned in an educational way. It did not file its charter with the recorder of deeds of Cook county. It made no annual reports to the Secretary of State. It had an office, however, at 120 South La Salle street in Chicago and an agent there upon whom process might have been served for the corporation. The attorney general brought an action in the superior court to procure its dissolution. It was served only by publication, and on June 10, 1937, a decree dissolving it was entered. August 23, 1944, the corporation, by its vice president, petitioned to have the decree of dissolution set aside. The petition set up that on March 15, 1937, pursuant to certification by the Secretary of State, the attorney general filed an information for dissolution of the corporation; that on March 16, 1937, the sheriff of Cook county returned a summons showing the corporation was not found in his county but averred as a matter of fact that on March 16, 1937, and before and after said date, petitioner maintained an office and agent upon whom summons could have been served at 120 South La Salle street in the City of Chicago, Cook county, Illinois, and the petitioner stated that no attempt was made by the sheriff of Cook county to serve a writ of summons on petitioner at that address or at any other place, and that the writ was returned with the certificate by the sheriff, stating he could not find the defendant or any agent in the employ of the defendant in said county of Cook, that this return was made by the sheriff without the summons having left

the office of the sheriff; that on the 10th day of June 1937, a decree was filed in the cause and approved by the court, ordering the dissolution of the corporation and that its franchises be declared null and void and of no force and effect, and further that the clerk of the court should certify the fact of setting aside the order of dissolution to the Secretary of State of the State of Illinois; that upon ascertaining the fact of the entry of this decree, the petitioner paid all fees and taxes due to the State of Illinois and thereafter made annual reports for all the years of its existence, including the year 1943; that all franchises, taxes, initial fees and other fees and charges had been paid; that the Secretary of State has certified to the attorney general of the State of Illinois the fact that petitioner did these things; that the Illinois corporation complied with the statutes of the State of Illinois with reference to domestic corporations doing business in this state and paid all costs accruing in the cause. The petitioner, therefore, asked an order directing the Secretary of State to expunge from his records any court order, memorandum or writing to the effect that the University of Notre Dame du Lac, a corporation, had been dissolved and the records of the Secretary of State be made to show that said University of Notre Dame du Lac, a corporation, had complied with the laws of Illinois and is authorized to do business in the State of Illinois with the same powers, rights and franchises as existed prior to the date of dissolution on the 10th day of June 1937.

The court found that at the time of the entry of the decree of dissolution the court had no jurisdiction of the defendant and that the University of Notre Dame du Lac had fully complied with the laws of the State of Illinois, and it was ordered and adjudged that the decree entered on the 10th day of June 1937, was "null and void and of no force and effect whatsoever"; that the same was vacated and set aside and held for

nought and the corporation restored of record to its standing, with such powers and authority and franchises as it possessed prior to the entry of that decree; that the court should so certify to the Secretary of State, and the Secretary of State should expunge from his records all entries theretofore made, showing that the charter, authority and franchises of the University of Notre Dame du Lac had been revoked and forfeited. Pursuant to the order the Secretary of State issued his certificate to this effect on June 14, 1944.

Neuhaus contends that he could not be divested of his inheritance by an *ex parte* order entered after the death of the testator, nor could such an order restore the Illinois corporation and divest the heir of his rights to the property. He cites *Miller v. Riddle,* 227 Ill. 53, and *Volunteers of America v. Peirce,* 267 Ill. 406. The cases are not in point. The defendants there were mere voluntary societies organized by individuals who had abandoned them. They were properly held without capacity to take because in each case the society had ceased to exist.

Neuhaus contends the court was without jurisdiction or power six years after term time to vacate the decree of dissolution since the decree, the sheriff's return and the record showed affirmatively the court's jurisdiction of the corporation at the time the decree of dissolution was entered. The decree of dissolution was entered June 11, 1937. The petition to set it aside was filed August 23, 1943. It is true there was no notice to counterclaimant. It is elementary that where a judgment or decree has been entered by a court upon proper personal service the court is without jurisdiction to set it aside after the term has expired at which it was entered. This particular decree, however, was not entered upon personal service. It shows the sheriff did not obtain such service when he could have done so and the State resorted to publication. We are not cited to any provision in the statute which gave to the trial

court power to enter a decree of dissolution upon service by publication when the defendant had an office in the county and an agent there upon whom service could have been obtained. The only parties interested were the State on one hand and the defendant corporation on the other. The attorney general, by virtue of the statute, represented the State. The corporation was not represented because it was not personally served and did not have actual notice or knowledge. When the facts were made to appear by the affidavit of the vice president of the corporation, the attorney general stipulated giving the court jurisdiction to set aside the decree. It would be an unusual situation if a stipulation of this kind could not be agreed to under such circumstances.

We have read the cases cited, *Barnes v. Chicago City Ry. Co.*, 185 Ill. App. 148; *Madison & Kedzie State Bank v. Cicero-Chicago Corrugating Co.*, 351 Ill. 180; *Chapman v. North American Life Ins. Co.*, 292 Ill. 179; and *Chicago Faucet Co. v. 839 Lake Street Bldg. Corp.*, 285 Ill. App. 151. We do not question the law as stated in these cases but hold the cases inapplicable to the instant case.

The decree finds that the corporation was in existence on the date of the death of the testator. The certificate of the Secretary of State, in evidence, justifies that finding. Ill. Rev. Stat. 1943, ch. 32, par. 163a94 [Jones Ill. Stats. Ann. 32.256 (95)]. It is the general rule that the existence of a *de facto* corporation cannot be attacked collaterally. *Woodlawn Social Entertainment Ass'n v. Anderson*, 187 Ill. App. 507; *Cozzens v. Chicago Hydraulic-Press Brick Co.*, 166 Ill. 213; *Morrison v. Forman*, 177 Ill. 427. It has also been held that an individual in his own right may not question the existence of a corporation. *People ex rel. Cassidy v. James Karban & Co., Inc.*, 307 Ill. App. 310. These are only a few of many cases which might be cited.

Counterclaimant cites the case of *Chicago Title & Trust Co. v. 4136 Wilcox Bldg. Corp.*, 302 U. S. 120, but facts there are in no wise similar to this case. See, also, Ill. Rev. Stat. 1943, ch. 32, par. 157.95 [Jones Ill. Stats. Ann. 32.097].

The stipulation to set aside the decree of dissolution was not an attempt to create a corporation or restore a defunct one, although, incidentally, that was the result of the order entered. Neuhaus was not a party to that proceeding and would have had no right to become a party to it, even if he had asked leave to appear. The proceeding here was not in aid of a fraud but was necessary to prevent one. *Sullivan County R. v. Connecticut River Lumber Co.*, 76 Conn. 464. To that end a court of equity may revive or resuscitate a dead corporation. It is a well-established rule in this State that a court of equity will not allow a charitable trust to fail for want of a trustee. (*Jansen v. Godair*, 292 Ill. 364, 377); nor will it be allowed to fail for uncertainty or because the manner specified for managing the gift cannot be carried into exact execution (*French v. Calkins*, 252 Ill. 243, 257; *Glader v. Schwinge*, 336 Ill. 551, 559; *Bruce v. Maxwell*, 311 Ill. 479, 486).

 It is next contended the decree should be reversed because the court twice (first at the beginning of the trial and afterwards just before the entry of the decree) denied motions in behalf of Neuhaus to continue the cause of action because of his absence in military service of the U. S. in a foreign country. These motions were made under the Soldiers and Sailors Relief Act, § 201, 50 USCA 521. The second motion was a renewal of the first, and affidavits were received for and against the motions. The court found the prosecution of the action would not be materially affected by the absence of Neuhaus from the trial. Under the statute he was an incompetent witness and could not testify. Property involved was personalty

and securities, the price of which was quite likely to fluctuate. The testator died September 20, 1942. The suit was filed May 7, 1943. Service was served on Neuhaus on the same day. Upon the probate of the will he entered his appearance in the probate court and waived notice of the proof of the will and codicil. He did not file his answer and counterclaim until February 2, 1944. October 3, 1942, he gave a receipt to the executor for a part of the personal effects bequeathed to him under the will. He gave a second receipt to the executor for property of the same kind on August 7, 1944, stating, however, that it was given without prejudice to his rights. The first counterclaim was stricken for want of necessary parties. The amended counterclaim was filed May 22, 1944. It is argued by the university that by consenting to the admission of the will and by accepting and receipting for tangible personal property bequeathed to him under the will, he was estopped from asserting his counterclaim.

In *Burns v. First Nat. Bank of Joliet,* 304 Ill. 292, 296, the Supreme Court said:

"His (testator's) intention being that all of the provisions of the will shall take effect, a beneficiary cannot accept that which is given by the will and set up any right or claim, however legal or well founded it may have been, which would defeat or prevent a full operation of the will."

The same rule is announced in *Gorham v. Dodge,* 122 Ill. 528, and *Madison v. Larmon,* 170 Ill. 65. We hold that while the giving of his consent to the probate of the will or his receipt for property, in which he expressly stated the receipt was not to waive his rights may not be an estoppel, his acceptance of a part of the bequest to him without such statement did have the effect of an estoppel, and as this took place prior to his induction into military service, he could not have been injured by his absence from the trial. The

question on this point is whether the trial court abused its discretion in denying his motions for continuance. *Boone v. Lightner*, 319 U. S. 561.

There is no doubt of the intention of this testator. The decree, in our opinion, rightly construed the will, and it is affirmed.

*Affirmed.*

O'CONNOR and NIEMEYER, JJ., concur.