Higbee Estate.

234

Argued November 13, 1952. Before STERN, C. J., STEARNE, JONES and CHIDSEY, JJ.

*Walter M. Newman,* with him *Walker & Newman,* for American Secular Union of Chicago, appellant.

*Ella Graubart,* with her *Patterson, Crawford, Arensburg & Dunn,* for Truth Seeker Company, Inc., appellant.

*James J. Lawler,* Special Counsel, with him *Robert E. Woodside,* Attorney General, for Commonwealth of Pennsylvania, intervenor.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 5, 1953:

The question presented by the appeals is whether or not a legacy to a *foreign* corporation not for profit lapsed when it is shown that the corporation *at date of testatrix's death* had been dissolved by a decree of court, but where, *at the time of distribution of the estate,* such decree of dissolution had been vacated, set aside and expunged by the court which had entered the prior decree. The court below ruled that the legacy had lapsed and directed distribution thereof to charity subsequently to be designated under the doctrine of *cy pres.*

Mary A. Higbee, the testatrix, died February 12, 1945, and by her will divided her residuary estate between two foreign corporations: Truth Seeker Company, Inc. and American Secular Union of Chicago. The first is a *business corporation* chartered by the State of New York and the second a *corporation not for profit* incorporated under the laws of the State of Illinois. The Truth Seeker Company, as the "other residuary legatee", contended that the legacy to the American Secular Union passed to the Truth Seeker Company under section 15 (c) of the Wills Act of June 7, 1917, P. L. 403, as amended, 20 PS 253. After the appeals to this Court the Commonwealth intervened and at the argument its special counsel argued in its behalf.

The factual situation in this case has slight, if any, effect upon the determination of these appeals. The question is one of law. The probate of the will was contested by the heirs upon allegations of lack of testamentary capacity, but its validity was sustained: *Higbee Will,* 365 Pa. 381, 75 A. 2d 599. The question as herein indicated arose upon the adjudication of the executor's account and related to distribution.

236

As appears in the adjudication, the Secular Union was incorporated in the state of Illinois in 1890 as "a not for profit corporation"; by decree of the Superior Court of Cook County, Illinois, entered on May 25, 1938, the corporation was dissolved; on August 12, 1948 the Cook County Court of Illinois vacated its prior decree of dissolution of May 25, 1938, in the following words: ". . . be and the same is hereby vacated, set aside and for naught held . . . and . . . the Secretary of State shall expunge from his records all entries heretofore made showing that the charter, authority and franchises . . . has (sic) been revoked and forfeited." The reasoning of the learned auditing judge, affirmed by the court in banc, ruling that there was a lapse of the legacy, is: "The decree dissolving the American Secular Union of Chicago was a valid decree which terminated the *de jure* existence of that corporation. The decree vacating the dissolution decree revived and infused *de jure* existence into a defunct corporation which had died when dissolved by a valid decree of a Court of the State which had created it, and which had full authority under the laws of Illinois to take away the corporate life the State had created. In the interim between its dissolution and its revival, during which had occurred the death of Mary A. Higbee, who bequeathed a legacy to the American Secular Union, the corporation had no *de jure* existence. The legacy did not vest in it, and any potential right it had in the legacy prior to its dissolution was irretrievably lost."

With this we do not agree. Such reasoning does violence to the plain meaning of the words employed by the Illinois court in its decree of vacation. Such decree expresses a clear and unequivocal intention to restore the corporation to the status it would have enjoyed had its dissolution never been decreed. This is the effect universally accorded *a decree of vacation.*

The rule is stated in 49 C. J. S. Judgments sec. 306: "Where a judgment is vacated or set aside by a valid order or judgment, it is entirely destroyed and the rights of the parties are left as though no such judgment had ever been entered." The footnote to this statement in the text cites the opinion of this Court in *Bergen v. Lit Brothers,* 354 Pa. 535, 47 A. 2d 671, wherein Mr. Justice (now Chief Justice) STERN said (p. 539): ". . . *the judgments having been properly vacated, they have no more future effect than if they had never existed."* (Emphasis supplied) See also *Herdic v. Woodward,* 75 Pa. 479, 483: "When the judgment was taken off, the action stood as before judgment was entered, . . ." Precisely the same effect was given to an order of vacation by the Appellate Court of Illinois in *Continental Illinois Nat. Bank & Trust Co. of Chicago v. University of Notre Dame Du Lac,* 326 Ill. App. 567, 63 N.E. 2d 127, 130: "The decree finds that the corporation was in existence on the date of the death of the testator." In that case, as here, there was a decree of dissolution extant on the date of testator's death, which was vacated by the decree referred to in the sentence quoted.

The court below distinguishes that case by pointing out that the decree of dissolution was vacated because the court which entered it had no jurisdiction over the corporation by reason of defective service, whereas no such finding of lack of jurisdiction has been here made. But it is a fundamental principle that in giving full faith and credit to a decree of a court of a sister state, we are not permitted to examine into the reasons which moved the sister state to rule as it did. The Supreme Court of the United States so held in *Milliken v. Meyer,* 311 U. S. 457, 462, 61 S. Ct. 339: ". . . the full faith and credit clause of the Constitution precludes any inquiry into the merits of the

cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." Our own cases have long recognized this rule. In *Mitchell, Receiver of the Liberty Clay Products Co.*, 291 Pa. 282, 139 A. 853, Mr. Justice WALLING said for the Court (p. 288) : "Of course, the questions of the court's jurisdiction and as to payment of the judgment are always open, but they are not contested here, and *beyond these questions the courts of another state will not go*: [citing cases]". (Emphasis supplied) See also: *Rogers v. Burns*, 27 Pa. 525; *Stilwell v. Smith*, 219 Pa. 36, 41, 67 A. 910; *Engineers National Bank v. Drew*, 311 Pa. 59, 166 A. 376.

Being thus restricted by the constitutional requirement of giving full faith to the acts of the Illinois court, we are not at liberty to inquire into the reason or logic of its decree of vacation, but are constrained to enforce it according to its unambiguous terms and to treat the earlier dissolution of appellant corporation as "vacated, set aside and for naught held." It necessarily follows that the corporation had a *de jure* existence on the date of the testatrix's death and is therefore entitled to receive the disputed legacy.

Because such corporate residuary legatee is a *de jure* corporation, as herein indicated, all consideration of *de facto* corporate existence is eliminated. Neither are we concerned as to how this appellant was searched out, the motives or the opinions of members or officers of the corporation in seeking payment of the legacy, nor the methods and extent of corporate action.

No issue was before the court below or is now before us concerning the *validity* of the residuary legacies. It is true that both corporations were termed "agnostic" in our opinion in the will contest (365 Pa. 381, 383). The etymological meaning of the word agnostic, however, is not necessarily confined to a re-

ligious usage. Such term may relate to a doctrine which affirms that all knowledge is relative and therefore uncertain. For example: both of these corporations appeared to be chiefly directed toward separation of church and state, freedom of speech, thought, and other liberal views on political and social philosophy. However, as this question is not now before us, we expressly refrain from passing upon it.

The Attorney General of the Commonwealth was given notice of this litigation after the appeal was taken and as above stated was permitted to intervene; he filed a paper book and his special counsel was permitted to present oral argument. Such notice and intervention were by virtue of the Estates Act of April 24, 1947, P. L. 100, sec. 10, 20 PS 301.10 and *Williams Estate,* 353 Pa. 638, 46 A. 2d 237, where charitable trust funds are being distributed *cy pres.* But under the present facts this doctrine is not here involved because of an existing qualified beneficiary. His argument that a bequest to an agnostic society is void has no application. If the legacy were void the fund would go to the *heir* and would not be awarded *cy pres.*

The decree of distribution is reversed and the record is remanded to the court below with direction to make a definitive decree of distribution in accordance with this opinion. The costs of these appeals to be paid by the Truth Seeker Company, Inc.