¶ 50 Orders affirmed.

J.F., Appellant

v.

D.B., Appellee.

Superior Court of Pennsylvania.

Submitted Sept. 4, 2007.

Filed Jan. 3, 2008.

Melissa H. Shirey, Erie, for appellant.

Joseph P. Martone, Erie, for appellee.

BEFORE: MUSMANNO, LALLY–GREEN and ANTHONY \*, JJ.

\* Retired Senior Judge assigned to The Superior Court.

OPINION BY ANTHONY, J.:

¶ 1 Appellant, J.F., appeals from the March 27, 2007 order entered in the Court of Common Pleas of Erie County denying his request for the reimbursement of child support payments made to Appellee, D.B., for the care of Appellant's three minor sons. Upon review, we affirm. The relevant facts and procedural history follow.

¶ 2 Appellant and his paramour, E.D., contacted a private surrogacy agency after the couple learned that E.D. could not conceive any additional children. In 2002, the agency matched the couple with Appellee, a married resident of Pennsylvania, and an egg donor, a single woman residing in Texas. In August of 2002, Appellant, Appellee, Appellee's husband, and the egg donor executed a surrogacy contract, which provided, *inter alia,* that Appellee would serve as the gestational carrier. Pursuant to this agreement, three of egg donor's eggs were fertilized *in vitro* with Appellant's sperm and were implanted into Appellee. Within four weeks, the parties learned that Appellee was pregnant with triplets.

¶ 3 On November 19, 2003, Appellee gave birth to triplets at Hamot Medical Center after thirty-five weeks of gestation. Due to this early delivery, the babies had minor medical problems, which required their placement into Hamot's neonatal intensive care unit. Over the next several days, Appellee expressed concern about Appellant's infrequent visits to the hospital and concluded that he and his paramour were unfit to parent the children. Appellee decided to take the children home with her, and on November 27, 2003, Hamot discharged the triplets to Appellee and her husband without Appellant's consent.

¶ 4 When efforts to contact Appellee failed, Appellant filed a Complaint for Custody and a Motion for Emergency Special Relief against Appellee. Promptly thereafter, a consent order was filed awarding temporary legal and physical custody of the triplets to Appellee, granting visitation to Appellant, and preserving Appellant's right to assert that Appellee lacked standing to pursue custody. Appellee filed an answer and counterclaim for custody. Appellant filed preliminary objections to the answer claiming that Appellee lacked standing to seek custody. On April 2, 2004, after a number of hearings, the trial court determined that Appellee had standing to pursue custody and child support. The trial court held two additional custody hearings, and on January 7, 2005, the trial court entered an order directing the parties to share legal custody and awarding primary physical custody to Appellee. The trial court granted Appellant partial physical custody/visitation and directed Appellant to pay child support.

¶ 5 Appellant filed a timely appeal. Therein, Appellant raised a number of challenges to the trial court's order including: (1) the trial court erred when it determined that Appellee possessed standing to pursue custody; (2) the trial court erred in finding that Appellee had standing to pursue child support; and (3) the trial court erred when it found that awarding custody to Appellee was in the children's best interests. *J.F. v. D.B.*, 897 A.2d 1261 (Pa.Super.2006). Upon review, our Court concluded that the trial court erred when it determined that Appellee had standing to pursue custody. *Id.* As such, our Court vacated the order of the trial court that awarded primary physical custody and child support to Appellee and directed that the trial court award Appellant full physical and legal custody of his biological children. *Id.*

¶ 6 On May 24, 2006, Appellant filed a Complaint for Support in which he sought to recover all child support paid to Appellee. The trial court ordered both parties to appear at a support conference, and on July 18, 2006, the support officer remanded the case to the trial court for testimony on this issue. The trial court held a hearing on this complaint on February 27, 2007. On March 27, 2007, the trial court denied the relief requested by Appellant. Appellant filed a timely notice of appeal and a timely concise statement of matters complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.

¶ 7 In his brief, Appellant raises two issues for our review:

[1.] The trial court erred in finding that, after the Superior Court vacated an order awarding child support to a gestational surrogate upon a finding that the gestational surrogate lacked standing to pursue an action for custody of the children, the biological father cannot recover from the gestational surrogate child support payments he was compelled to make pursuant to the vacated order awarding child support.

[2.] The trial court erred in finding that a gestational surrogate, whom the Superior Court has ruled lacked standing to pursue custody of the children because she obtained physical custody of the children in defiance of the biological father's wishes and the parent/child relationship, nevertheless has standing to pursue an action for and receive child support.

Appellant's Brief, at 3.

¶ 8 Preliminarily, we observe:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discre-

tion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Bulgarelli v. Bulgarelli,* 2007 PA Super 295, ¶ 5, 934 A.2d 107 (quotations omitted).

■ ¶ 9 In his first issue, Appellant argues that the trial court erred when it concluded that Appellant could not recover the child support payments that he made pursuant to the vacated trial court order. Appellant's Brief, at 9. Appellant maintains that the Superior Court's vacation of the order entirely annulled it, thereby requiring the trial court to return the parties to the positions that they would have occupied had the trial court never entered the support order. *Id.* Upon review, we do not find that the trial court committed an error of law.

■ ¶ 10 Initially, we agree with Appellant that "[w]here a judgment is vacated or set aside (or stricken from the record) by valid order or judgment, it is entirely destroyed and the rights of the parties are left as though no such judgment had ever been entered." *Fitzpatrick v. Fitzpatrick,* 811 A.2d 1043, 1045 (Pa.Super.2002); *see also In re Higbee's Estate,* 372 Pa. 233, 237, 93 A.2d 467, 469 (1953) (stating

"[w]hen the judgment was taken off, the action stood as before judgment was entered ...."). We disagree, however, with the suggestion that the full repayment of support would place Appellant in the position that he would have been in had the trial court never entered the order.

■ ¶ 11 It is well settled that a parent has an absolute duty to support his children and that this obligation is not dependent upon a person having custody of a child. *Reinert v. Reinert,* 926 A.2d 539, 542 (Pa.Super.2007); *Kauffman v. Truett,* 771 A.2d 36, 39 (Pa.Super.2001). Moreover, the right to child support belongs to the children. *Kesler v. Weniger,* 744 A.2d 794, 796 (Pa.Super.2000). In our view, Appellant's payment of support did not unjustly enrich Appellee.[1] Rather, Appellant fulfilled a financial obligation to his three minor sons that would have existed if the trial court had never awarded physical custody and support to Appellee.

¶ 12 We find the circumstances in *Elkin v. Williams,* 755 A.2d 695 (Pa.Super.2000) and *Cook v. Gill,* 663 S.W.2d 789 (Mo.App. 1984) entirely distinguishable. In *Elkin,* Ms. Williams filed an appeal after the trial court ordered her to pay child support to a family friend who permitted Ms. Williams' eighteen-year-old son to reside with her. Upon review, our Court determined that Ms. Williams' son was not a "child" or a "minor" and, as a consequence, the family friend lacked standing to file a support action. We also noted that Ms. Williams owed no duty of support to her son as he left her home on his own accord. As such, we vacated the order of support, dismissed the support complaint for lack of standing, and directed that Ms. Williams be reim-

---

1. The certified record does not contain any evidence that Appellee and/or her husband misallocated the support payments. Although Appellant mentions that Appellee "provided no accounting, no receipts, [and] no testimo- ny" to demonstrate that she used the money to support the children, *see* Appellant's Brief, at 18, Appellant has not cited any case law in support of his assertion that Appellee bore this burden.

bursed for any monies paid as a result of the support order.

¶ 13 In *Cook*, Ms. Cook sought full restitution for all child support paid pursuant to a vacated court order. The Missouri Court of Appeals had vacated the child support order because Mr. Gill failed to demonstrate that the children's expenses had increased. *See In re Marriage of Cook*, 636 S.W.2d 419 (1982). Nevertheless, the trial court denied the request for restitution. On appeal, the Court of Appeals determined that Ms. Cook should receive full restitution from Mr. Gill "of all benefits acquired under the judgment during the pendency of the appeal." *Cook*, 663 S.W.2d at 790. Unlike the appellants in *Elkin* and *Cook*, however, Appellant did not confer any benefit upon his children to which they were not entitled. Therefore, his first issue fails.

■ ¶ 14 In his second issue, Appellant contends that the trial court erred when it determined that Appellee had standing to pursue an action for child support. Appellant's Brief, at 14. Specifically, Appellant argues that Appellee should not have standing to seek child support where she placed herself in the position of caring for the children against Appellant's wishes. *Id.* at 16. Upon review, we do not find that the trial court erred.

¶ 15 Pursuant to Section 4341(b) of the Domestic Relations Code, "[a]ny person caring for a child shall have standing to commence or continue an action for support of that child regardless of whether a court order has been issued granting that person custody of the child." 23 Pa.C.S.A. § 4341(b); *see also* Pa.R.C.P. 1910.3 (stating an action for child support "shall be brought . . . on behalf of a minor child by a person caring for the child regardless of whether a court order has been issued granting that person custody of the child"). In the instant case, Appellant does not dispute that Appellee cared for the children from November 27, 2003 until April 21, 2006. Appellant's Brief, at 16. Instead, Appellant argues that our Court should ignore the plain language of the statute and carve out an exception in those instances where the person caring for the child does so in defiance of a parent's wishes. This we may not do. *See* 1 Pa. C.S.A. § 1921(b) (stating "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit").

¶ 16 Additionally, our Court's decision in *Seder v. Seder*, 841 A.2d 1074 (Pa.Super.2004) does not compel reversal. In that case, our Court considered whether Mr. Seder had standing to pursue child support where the trial court awarded him primary physical custody of his child but his wife kept the child in Jordan in defiance of the court's order. Upon review, our Court concluded that Mr. Seder possessed standing under Rule 1910.3(b) of the Pennsylvania Rules of Civil Procedure. *Seder* did not address the pivotal question in the instant case, namely, whether the party caring for children in defiance of the parent's wishes may pursue support.

¶ 17 Finally, we must address Appellant's concern that any decision to affirm the trial court's order would contravene sound policy. Appellant's Reply Brief, at 4. Specifically, Appellant argues:

> To deny [Appellant] . . . the ability to recover the funds, would send the message to individuals in [Appellant's] . . . position that they should not comply with a child support order pending appeal because they cannot recover the money once it has been paid, despite the child support order being vacated. Individuals such as [Appellant] . . . would be in a better position to not pay the child support pending the appeal because the

obligation to pay would be relieved once the order is vacated. Furthermore, it sends the message to other gestational surrogates that if they take action similar to that of [Appellee] ..., with regards to children to whom they have no legitimate rights, while the custody case winds its way through the legal system, they can collect and retain tens of thousands of dollars in money they were never entitled to receive. This is certainly not the message this Court should send.

*Id.*

¶ 18 Foremost, we disagree with the proposition that our decision will encourage support payors to avoid their support obligations during the pendency of the appeal. Apart from a parent's moral obligation to support his/her own children, Appellant acknowledges that, if he had acted in defiance of the existing order, "he would have been subjected to numerous enforcement provisions, including attachment of his assets, civil contempt of court proceedings, entry of a judgment that could be enforced against his real or personal property, and incarceration." Appellant's Brief, at 12, citing Pa.R.C.P. 1910.23, 1910.24, 1910.25, 1910.25–5. Furthermore, we reject the contention that our action will persuade gestational carriers to take custody of children so they can collect and retain support money. As discussed *supra*, this argument is premised on the notion that the gestational carrier is the actual beneficiary of the support dollars. Also, as our Court has clarified that a gestational carrier, who acts in defiance of the parent's wishes, lacks standing to seek custody, *see J.F., supra*, we suspect that fewer gestational carriers in this Commonwealth will be placed in the position of caring for the children. For all of the foregoing reasons, Appellant's second issue fails.

¶ 19 Order affirmed. Jurisdiction relinquished.

¶ 20 LALLY–GREEN, J., files a Concurring Statement.

CONCURRING STATEMENT BY LALLY–GREEN, J.:

¶ 1 While the analysis of the esteemed majority is thorough and well-reasoned, I respectfully concur.

¶ 2 This case involves a third party gestational carrier, Appellee, who unilaterally took triplets home from the hospital after their birth in flagrant defiance of the wishes of Appellant, the biological father. Following extensive litigation over custody, the trial court initially ordered shared legal custody of the children, primary physical custody to the gestational carrier, and child support. In an appeal from that order, this Court held that the gestational carrier lacked standing to pursue custody or child support and vacated the orders. *J.F. v. D.B.*, 897 A.2d 1261 (Pa.Super.2006).

¶ 3 Appellant then filed a complaint seeking to recover all child support payments he made to Appellee pursuant to the vacated order. The trial court denied Appellant's motion for restitution. The esteemed majority would affirm because the support payments Appellant made satisfied Appellant's legal and moral duty as a parent to provide financial support for his children. The majority reasoned that, regardless of the void support order, Appellant had a duty to support the triplets and, therefore, he could not recover the support he had paid pursuant to the vacated support order.

¶ 4 Appellant argues that he has no duty to support the children under the void

(vacated) support order.[2] I agree. Yet, I also agree with the majority that Appellant has a moral and a statutory duty to reasonably support his children.

¶ 5 Thus, the question becomes what is the reasonable amount of support in unique circumstances such as these when no authority existed for the original support order. Appellant claims he is entitled to a reimbursement of the whole amount he had paid in support to Appellee. He does not argue that he paid an unreasonable amount in support. He does not argue that Appellee improperly used the support monies and should reimburse Appellant for the amount of improper use.

¶ 6 The majority is correct that Appellant is not entitled to a return of the entire amount. On the other hand, a claim of "unreasonableness" or "inappropriate use" should be permitted in circumstances such as these should the facts support such claims. Here, Appellant points to no such facts that would support such claims.

¶ 7 For the foregoing reasons, I respectfully concur.

---

2. The cases that deal with a parent seeking reimbursement for child support payments made pursuant to a vacated order do not involve an improper taking of the father's children by a surrogate. Here, the surrogate mother took the triplets without parental or legal or judicial authorization. In a sense, she kidnapped them. The court had no authority to issue those orders and, thus, they were void. Thus, the case law that might apply in other vacated support order cases does not apply here.

Likewise, the applicability of the Divorce Code to this situation is in doubt, since Appellant and Appellee were never married and never held themselves out as being married.