J-A04037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| H & M HOLDINGS GROUP, LLC, HAUSER FAMILY FARMS, LLC, MELINDA HAUSER DAVIS & HANNAH M. HAUSER | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 517 MDA 2024 |
| ALAN KIM PATRONO, JONATHAN ALAN PATRONO, JANE HAUSER PATRONO, POLLY E. PATRONO A/K/A POLLY E. PATRONO-CARLSON, JOHN J. MURPHY, III, PATRONO & MURPHY, LLC, APPLE LEAF ABSTRACTING & SETTLEMENT COMPANY AND JOHN DOE(S)/JANE DOE(S) | : : : : : : : : : : : | |
| Appellants | | |

Appeal from the Order Entered March 13, 2024
In the Court of Common Pleas of Adams County
Civil Division at No(s):  2018-SU-1293

BEFORE:  LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:       **FILED: MAY 15, 2025**

Alan Kim Patrono ("Alan") and Jane Hauser Patrono ("Jane") (collectively, "the Patronos") appeal from the order entering default judgments as discovery sanctions.  We quash this appeal.

This matter arises out of a family dispute over the management and debts of a now-bankrupt winery and hard cider manufacturer, known as "Hauser Estate."  Jane is the daughter of Helen Hauser ("Helen") and is married to Alan.  They have two adult children, Jonathan and Polly.  Alan and

Jonathan are attorneys. Hannah M. Hauser ("Hannah") and Melinda H. Davis ("Melinda") are Jane's sisters.

Helen had owned several properties in Adams County and used her land for her family's apple orchard business. In 2006, at Jonathan's suggestion, the family converted their orchard business into a wine and hard cider business. Jonathan held a majority of the voting shares of Hauser Estate and the position of president. Hannah and Melinda held minorities of the voting shares. In 2007, the family also created Hauser Family Farms ("HFF"), a limited liability corporation, to which Helen transferred the real property on which Hauser Estate was operating. Helen died in 2012.

Hauser Estate obtained loans from Members First Federal Credit Union ("Members First"), which Hannah, Melinda, Jane, Alan, and Jonathan each secured with personal guaranties ("the guaranties"). The guaranties contained arbitration clauses and confession of judgment provisions. Alan also drafted a contribution agreement among the three sisters, Melinda, Hannah, and Jane, that provided each sister would be one-third liable for future loans made by any one of the sisters, or Alan, to benefit Hauser Estate ("contribution agreement").[1]

_____

[1] While the Patronos asserted the contribution agreement bound Hannah and Melinda, Hannah and Melinda disputed whether the contribution agreement was enforceable as it did not contain all terms they requested. **See** Answer to Third Am. Compl. with Am. New Matter and Counterclaims, 4/5/22, at 60-61, 74-75; Answer to Am. New Matter and Counterclaims and New Matter, 9/12/22, at 12.

Hauser Estate began to fail, and it defaulted on the Members First loans. The family discussed a sale of Hauser Estate but could not agree on a buyer. As the disputes among the family members increased, Alan drafted a corporate governance agreement for Hauser Estate ("governance agreement").[2] Still, Hannah and Melinda believed Jane, Alan, and Jonathan were mismanaging Hauser Estate for their own personal gains, while Jane, Alan, and Jonathan questioned whether Hannah and Melinda were acting in Hauser Estate's best interests.

Events surrounding the family disputes accelerated in July 2018. Hannah and Melinda formed their own company, H&M Holdings Group, LLC ("H&M"), which purchased the notes and guaranties on the Members First loans. Around the time of the purchase, the Patronos, along with their son, Jonathan, engaged in numerous transfers of their interests in real property to Polly, Jane and Alan's daughter/Jonathan's sister ("the 2018 transfers"). By the end of July 2018, H&M commenced the first in a series of actions in Adams, Dauphin, and Cumberland Counties and involve numerous plaintiffs and defendants.

_____

[2] The Patronos asserted the governance agreement created in Hauser Estate an executive committee to resolve family disputes. *See* Answer to Third Am. Compl. with Am. New Matter and Counterclaims, 4/5/22, at 67-68. They also claimed that the governance agreement had the goal of preserving the Members First loans and preventing defaults on the loans. *See e.g.*, Jane's Pet. to Strike or Open, Cumberland County, 2019-12302, 12/26/19, at 9. Hannah and Melinda admitted there was a governance agreement but denied that it created an executive committee. *See* Answer to Am. New Matter and Counterclaims and New Matter, 9/12/22, at 12.

Relevant to this appeal, H&M, Hannah, Melinda, among others ("the H&M parties") filed a complaint in Dauphin County against the Patronos, their children, Jonathan and Polly, and others for professional negligence and breaches of fiduciary duty. The parties agreed to transfer that matter to Adams County, where H&M had already commenced separate actions, which included the filing of *lis pendens* against the Adams County properties involved in the 2018 transfers. The trial court directed all plaintiffs to file a third amended complaint in an attempt to clarify the actions.

In September 2021, the H&M parties filed the court-ordered third amended complaint, wherein they alleged the Patronos breached their fiduciary duties; conspired to breach fiduciary duties, committed professional malpractice, fraudulently transferred or conspired to fraudulently transfer property in violation of the Pennsylvania Uniform Voidable Transaction Act ("PUVTA")[3] ("the PUVTA claims"), and converted or conspired to convert apple crops, proceeds on apples, and funds from a different line of credit.[4] **See** Third Am. Complaint, 9/7/21, at 33-47. The Patronos filed an answer, new

---

[3] **See** 12 Pa.C.S.A. §§ 5101-5114.

[4] The named plaintiffs in the third amended complaint were H&M, HFF, Hannah, and Melinda. The named defendants in the third amended complaint included Jane, Alan, Jonathan, and Polly, as well as John Murphy ("Murphy"), the law firm of Patrono & Murphy, and Apple Leaf Abstracting & Settlement Company. Murphy, also an attorney, was Alan's partner in the firm of Patrono & Murphy, and in Apple Leaf Abstracting & Settlement Company. Murphy, Patrono & Murphy, and Apple Leaf Abstracting & Settlement Company have not filed briefs in this appeal.

matter, and counterclaims, and, after the court sustained, in part, and overruled, in part, preliminary objections, filed an answer with amended new matter and counterclaims. The amended counterclaims included the Patronos' assertions they made $3 million in personal loans to Hauser Estate, for which Hannah and Melinda were each one-third liable under the sisters' contribution agreement ("the contribution counterclaim"). The parties then agreed to separate the PUVTA claims for a nonjury trial, to be followed by a jury trial on the remaining claims and counterclaims.[5]

During the course of the PUVTA nonjury trial that resulted in findings against the Patronos (and their son and daughter, Jonathan and Polly, respectively), discovery proceedings continued on the remaining claims and counterclaims. The contribution counterclaim resulted in a particularly protracted discovery dispute. The H&M parties demanded further documentation to corroborate the Patronos' assertions they personally loaned Hauser Estate $3 million. Throughout discovery, the Patronos insisted they had turned over all documents in their possession or control: essentially copies of checks and deposit records.

The trial court held multiple hearings and attempted to resolve this and related discovery disputes. Following an April 2023 hearing, the court afforded

---

[5] We note the Patronos and their children have taken related interlocutory appeals from the trial court's issuance of an injunction after finding against them on the PUVTA claim, which we address at J-A04036-25. The Patronos individually and their son Jonathan have all taken interlocutory appeals from another order denying their petition to compel arbitration, which we address at J-A04038-25 through J-A04040-25.

the Patronos twenty days to locate further documentation to support their contribution counterclaim and directed them to provide personal income tax returns as well as Hauser Estate documents. Following a hearing in June 2023, the court sought personal verifications from the Patronos to support their counsel's representations that they did not have access to the information or documents the H&M parties had requested. Following a September 2023 hearing, the court required the Patronos to provide personal verifications that the tax returns and supporting documents they provided to counsel were accurate and to also provide verified statements of their compliance with the court's order. The Patronos filed motions for reconsideration of the September 2023 order. The trial court denied reconsideration but extended the deadline for compliance.

In October 2023, three days after the expiration of the extended discovery deadline, **_and eleven days before a scheduled trial date_**, the Patronos' counsel filed another motion for reconsideration, wherein counsel averred Alan recently discovered thirty-seven boxes of Hauser Estate documents. **_See_** Second Mot. to Reconsider, 10/19/23, at 4 (unpaginated).[6]

---

[6] The second motion for reconsideration asserted Alan informed counsel of the discovery of the boxes on October 6, 2023. As discussed by the trial court, Alan later testified that he was unaware of the existence of the boxes until September 25, 2023. **_See_** Trial Ct. Op., 8/9/24, at 30-32 (discussing, in part, N.T., 11/2/23, at 67, 73). Although Alan also testified that he was not sure what the boxes contained, he later contradicted his own testimony by indicating the boxes contained documents concerning the operation of Hauser Estate. **_See id_**. (discussing, in part, N.T., 11/2/23, at 73, 154).

That revelation prompted the H&M parties to file for default judgments as discovery sanctions pursuant to Pa.R.Civ.P. 4019(c)(3).[7]  In November 2023, the trial court held additional hearings on the motion for default judgments, and, on February 8, 2024, entered default judgments against the Patronos, and other defendants, on nearly all of the remaining claims in the third amended complaint and on the Patronos' counterclaims.[8]

On February 29, 2024, the Patronos filed a petition to strike or open the default judgments.  They asserted, in relevant part, that the trial court should have designated the dismissal of the counterclaims as judgments of *non pros* rather than default judgments.  The H&M parties filed a response to strike that petition and for additional attorney's fees.  The trial court, on March 13, 2024, denied Jane and Alan's petition to strike or open the default judgments, granted Hannah and Melinda's request for attorney's fees, and scheduled a hearing for a determination of those fees.  The Patronos timely appealed from

---

[7] Pennsylvania Rule of Civil Procedure 4019(c)(3) permits a court to "enter[] a judgment of *non pros* or by default" against a disobedient party during discovery.  **See** Pa.R.Civ.P. 4019(c)(3).

[8] The entry of default judgments did not resolve all issues against all parties arising out of the third amended complaint because the court deferred a hearing on damages, attorney's fees, and other sanctions.  Additionally, the H&M parties' counts against Murphy, Alan's business partner, remained outstanding, as did a counterclaim regarding proceeds of an apple crop owed to Polly, the latter of which the court directed to compulsory arbitration due to the amount at issue.  Lastly, a related action concerning an opened confessed judgment on the Members First loans, which the trial court had stayed, remained pending, and in the same order granting the H&M parties' motion for default judgments, the trial court lifted the stay.

the order denying their petition to strike or open, and they and the trial court complied with Pa.R.A.P. 1925.

The Patronos raise the following issue for our review:

Whether the trial court erred in entering "default" judgments as a discovery sanction on the Patronos' counterclaims when such judgments were, or should have been, by law in the nature of judgments of *non pros*, and rejecting application of Pa.R.C[iv].P. 3051 to the Patronos' petition to strike or open the wrongly fashioned judgments.

The Patronos' Brief at 6 (some capitalization omitted).

Before considering this issue, we note the Patronos' claim that the trial court erred in entering judgments by default, rather than judgments of *non pros*, closely relates to the threshold question of whether this Court has jurisdiction to consider this appeal. Because questions concerning this Court's jurisdiction present questions of law, our standard of review is *de novo* and our scope of review is plenary. **See Chongqing Kangning Bioengineering Co., Ltd. v. Conrex Pharm. Corp.**, 327 A.3d 209, 214 (Pa. Super. 2024); **see also Gould v. Wagner**, 316 A.3d 634, 639 (Pa. Super. 2024).

The Patronos assert the trial court erred in entering defaults judgments on their counterclaims because they were the parties bringing the counterclaims. **See** The Patronos' Brief at 19-25. In support, they contend Pennsylvania law recognizes party-based distinctions between judgments of *non pros*, which sanctions parties who fail to prosecute their claims, and judgments by default, which generally apply when parties fail to defend against a claim. **See id**. at 22-24. The Patronos contend because they raised

- 8 -

counterclaims, they essentially stood in the shoes of plaintiffs, and their noncompliance with discovery constituted a failure to prosecute their counterclaims rather than a failure to defend. The Patronos assert the trial court's failure to recognize the party-based distinction between judgments of *non pros* and by default resulted in the erroneous denial of its petition to strike the judgments on its counterclaims and the improper grant of additional sanctions based on the mere filing of the petition to strike or open. **See id**. at 29-30.

The Patronos further argue the trial court's refusal to enter judgments of *non pros* on their counterclaims impedes their procedural and appellate rights. **See id**. at 32. The Patronos reason Pa.R.Civ.P. 3051 requires a party suffering a judgment of *non pros* to file a petition to strike or open to preserve issues for review, even for a discovery sanction. **See id**. at 26-31. The Patronos suggest that if the trial court had properly denominated the judgments entered on the counterclaims as judgments of *non pros*, rather than by default, the court would have more properly considered their petition to strike or open as an opportunity to review its own decisions. **See id**. at 34-35.[9] Moreover, they contend the court's denial of their petition to strike or open would have allowed them to take this interlocutory appeal as of right

---

[9] The Patronos add that judgments of *non pros* and by default are distinguishable because a judgment by default generally has preclusive effect as *res judicata*, while a judgment of *non pros* generally will not. The Patronos' Brief at 36-37. They contend that the denomination of the judgments on the counterclaims as by default improperly limited their ability to reraise claims in subsequent proceedings. **See id**.

under Pa.R.A.P. 311(a)(1), which permits immediate appeals from orders refusing to open or strike judgments. **See** The Patronos' Reply Brief at 7-10; **see also** Pa.R.A.P. 311(a)(1) (stating that "[a]n appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from . . . [a]n order refusing to open, vacate, or strike off a judgment"). The Patronos conclude the entry of the judgments by default on the counterclaims constituted a fatal defect on the face of the record, the judgments must be stricken, and the matter be remanded with directions for the trial court to enter new judgments of *non pros* on the counterclaims, allow the filing of a new petition to open the *non pros*, and to consider the new petition using the standards for opening a judgment under Pa.R.Civ.P. 3051. **See** The Patronos' Brief at 22,-24, 49.

The trial court, in its Pa.R.A.P. 1925(b) statement, determined it properly denied the Patronos' petition to strike or open the judgments entered on their counterclaims. The trial court suggested the language of Pa.R.Civ.P. 4019(c)(3) provided it with a basis to enter judgments by default as discovery sanctions regardless of whether it did so on the H&M parties' claims against the Patronos or the counterclaims against the H&M parties. **See** Trial Ct. Op., 8/9/24, at 35. The trial court did not specifically address the Patronos' claim that the entry of default judgments on counterclaims is technically inappropriate but noted its acceptance of the Patronos' argument would result in "bifurcated, inefficient, and lengthy resolution of essentially identical issues in the same litigation through multiple appeals." **Id**. at 36.

- 10 -

Following our review, we acknowledge the distinction between judgments of *non pros* and by default. A judgment by default generally imposes responsibility on a party who had an opportunity to defend a claim but did not do so and generally protects against a dilatory conduct that thwarts another party's ability to establish its own claims. ***See Attix v. Lehman***, 925 A.2d 864, 867 (Pa. Super. 2007); ***Allegheny Hydro No. 1 v. Am. Line Builders, Inc.***, 722 A.2d 189, 195 (Pa. Super. 1998). A judgment of *non pros* sanctions a party for failing to prosecute its own claims promptly. ***See Collura v. L & E Concrete Pumping, Inc.***, 686 A.2d 392, 396 (Pa. Super. 1996).

In the context of discovery disputes, this Court has consistently stated that a party has no right to file a petition to strike or open a default judgment entered as discovery sanction. ***See Miller Oral Surgery, Inc. v. Dinello***, 493 A.2d 741, 743 (Pa. Super. 1985) (stating general rule that "default judgment entered pursuant to Pa.R.C[iv].P. 4019(c)(3) is comparable to a judgment entered after hearing. A party may request a court to reconsider a sanction order entering judgment, of course, but neither reconsideration nor refusal to reconsider will transform an interlocutory order into one that is final and appealable"); ***Angelichio v. Myers***, 110 A.3d 1046, 1050-51 (Pa. Super. 2015) (applying ***Miller Oral Surgery***). However, the same is not true for a judgment of *non pros*. ***See Sahutsky v. Mychak, Geckle & Welker, P.C.***, 900 A.2d 866, 869 (Pa. Super. 2006) (stating that "in all cases where *non pros* has been entered, including [Pa.R.Civ.P.] 4019 sanction cases . . . , a

- 11 -

petition to strike off or open must be timely filed after the *non pros* in order to preserve the issue for appeal"); Pa.R.Civ.P. 3051, cmt. (stating Rule 3051 was amended in 1991 to provide uniform procedures concerning the different types of judgments of *non pros*, including judgments of *non pros* entered under Pa.R.Civ.P. 4019(c)(3)).  Thus, an order entering a judgment by default as a discovery sanction cannot be immediately appealed.  However, because Pa.R.Civ.P. 3051 requires a party to file a petition to strike or open a judgment of *non pros*, at least for the purpose of issue preservation, and Pa.R.A.P. 311(a) permits an appeal from an order refusing to strike a judgment, there is at least a colorable argument that the denial of such a petition could be immediately appealable.

Nevertheless, we conclude the Patronos' argument that the instant order is immediately appealable is flawed.   Here, the trial court entered default judgments on the Patronos' counterclaims, and our case law holds that the Patronos had no right to file a petition to strike or open a default judgment, or take an immediate appeal while other claims against other parties remained outstanding.  **See Miller Oral Surgery**, 493 A.2d at 743; **Angelichio**, 110 A.3d at 1050-51.  Instead, the Patronos had a right to file for reconsideration asking the court to redesignate the type of judgments it entered on the counterclaims and for leave to file the proposed petition to strike or open if the trial court granted reconsideration.  The filing of a petition to strike or open a judgment alone was technically improper, and the purported denial of that petition did not give rise to an immediate appeal under Pa.R.A.P. 311(a).

- 12 -

*See Miller Oral Surgery*, 493 A.2d at 743; *Angelichio*, 110 A.3d at 1050-51. Accordingly, we quash this appeal.[10]

_____

[10] Even assuming Pa.R.A.P. 311(a)(1) vested this Court with jurisdiction in this appeal, we would not accept the Patronos' arguments that they are entitled to a remand for the re-entry of judgments of *non pros*, and essentially a restart of the procedures for another interlocutory appeal of the same issue. The crux of the Patronos' argument is that the trial court's improper designation of judgments on the counterclaims constituted a fatal defect or irregularity on the face of the record. However, pursuant to Pa.R.Civ.P. 4019(c)(3), the trial court has the authority, upon a motion by a party, to enter a judgment of *non pros* or by default. Aside from the party-based distinction between *non pros* and default, the Patronos identify no defects or irregularities in the procedures leading to the imposition of discovery sanctions that would require striking the judgments on their counterclaims. The Patronos do not assert that the entry of judgments against them was improper; they only assert error in the type of judgments entered. Such defect would be technical and subject to correction without invalidating the underlying judgments. *Cf*. *Dominic's Inc. v. Tony's Famous Tomato Pie Bar & Rest., Inc.*, 214 A.3d 259, 272 (Pa. Super. 2019) (noting that the striking of a judgment annuls the original judgment and leaves the parties as if no judgment had been entered); *J.F. v. D.B.*, 941 A.2d 718, 721 (Pa. Super. 2008) (noting that where a judgment is stricken from the record, the rights of the parties are left as though no such judgment had ever been entered); *cf. also West Penn Sand & Gravel Co. v. Shippingport Sand Co.*, 80 A.2d 84, 86 (Pa. 1951) (noting formal defects, mistakes and omissions in judgments "may be corrected by amendment where the cause of the action is not changed, where the ends of justice require the allowance of such amendment, and where the substantive rights of defendant or of any third persons will not be prejudiced thereby") (internal citations omitted). We further note that the Patronos offered no arguments the trial court abused its discretion when sanctioning their conduct during discovery, nor do they challenge the trial court's determination they could not establish reasonable explanation or legitimate excuse for their conduct giving rise the entry of the judgments against them. *See* Trial Ct. Op., 8/9/24, at 37 (concluding that "[i]n light of the record . . . there is no reasonable explanation or legitimate excuse for [the Patronos'] egregious conduct in this litigation"). Accordingly, while we do not address the merits of the alleged error in denominating the judgments as default rather than *non pros*, we would conclude the Patronos'

*(Footnote Continued Next Page)*

Appeal quashed.

President Judge Lazarus joins this memorandum.

Judge Nichols concurs in the result.


Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 05/15/2025

---

proposed remedy, which would be a vehicle for further delay in this matter, would be out of proportion with the alleged error.

We note that the H&M parties have requested additional sanctions for the filing of this appeal for the sole purpose of delay.  **See** The H&M Parties' Brief as 63.  However, as there was at least a colorable basis for the Patronos' arguments, we decline at this juncture to impose sanctions, but caution the Patronos that similar interlocutory appeals in these actions could be construed as dilatory or vexatious conduct.